UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LAUREN I. O/B/O D.L.H.,

        Plaintiff,

       v.                                      **DECISION AND ORDER**
                                                      19-CV-1415S
COMMISSIONER OF SOCIAL SECURITY

        Defendant.
_____

        1.        Plaintiff Lauren I.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her application on behalf of D.L.H. for supplemental security income benefits under the Act. (Docket No. 1.) This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

        2.        On November 10, 2015, Plaintiff filed a SSI application on behalf of her child, D.L.H., alleging that D.L.H. has been disabled since September 3, 2015, due to sensory issues and attention-deficit hyperactivity disorder ("ADHD"). (R.[2] at 87-88.) Plaintiff's application was denied. Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ"). ALJ Paul Georger held a hearing on August 21, 2018, at which Plaintiff and D.L.H., represented by her attorney, appeared and testified. (R. at 39-85.) At the time of the hearing, Plaintiff was six years old. (R. at 86.)

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify plaintiff by her first name and last initial.

[2] Citations to the underlying administrative record are designated as "R."

3. On October 1, 2018, the ALJ issued a written decision denying Plaintiff's application on behalf of D.L.H.. (R. at 17-33.) On August 23, 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (R. at 1.) Plaintiff then filed the current action on October 22, 2019, challenging the Commissioner's final decision.[3]

4. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 9, 13.)  Plaintiff filed a response on August 5, 2020, (Docket No. 14), at which time this Court took the motions under advisement without oral argument. For the reasons that follow, Plaintiff's motion is denied, and Defendant's motion is granted.

5. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

---

[3] The ALJ's October 1, 2018, decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

6. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7. An individual under the age of eighteen is considered disabled within the meaning of the Act "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §1382c(a)(3)(C)(i). The Commissioner has set forth a three-step process to determine whether a child is disabled as defined under the Act. See 20 C.F.R. §416.924. At step one, the ALJ determines whether the child is engaged in substantial gainful work activity. Id. §416.924(b). If so, the child is not disabled. Id. If not, the ALJ proceeds to step two and determines whether the child has a medically determinable impairment(s) that is "severe." Id. §416.924(c). If the child does not have a severe impairment(s), he or she is not disabled. Id. If the child does have a

3

severe impairment(s), the ALJ continues to step three.  At step three, the ALJ examines whether the child's impairment(s) meets, medically equals, or functionally equals the listed impairments in Appendix 1 to Subpart P of Part 404 of the Commissioner's regulations (the "Listings"). Id. §416.924(d).

8. In determining whether an impairment(s) functionally equals the Listings, the ALJ must assess the child's functioning in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being.  Id. §416.926a(b)(1)(i)-(vi). To functionally equal the Listings, the child's impairment(s) must result in "marked" limitations in two domains or an "extreme" limitation in one domain.  Id. §416.926a(a).  A child has a "marked" limitation when his or her impairment(s) "interferes seriously" with his or her ability to independently initiate, sustain, or complete activities.  Id. §416.926a(e)(2).  A child has an "extreme" limitation when his or her impairment(s) "interferes very seriously" with his or her ability to independently initiate, sustain, or complete activities.  Id. §416.926a(e)(3).  If the child has an impairment(s) that meets, medically equals, or functionally equals the Listings, and the impairment(s) meets the Act's duration requirement, the ALJ will find the child disabled. Id. §416.924(d).

9. The ALJ first found that D.L.H. was a preschooler on the date of the application and a school-age child at the time of the hearing. (R. at 20.) The ALJ then followed the three-step process for evaluating D.L.H.'s SSI claim. At the first step, the ALJ found that D.L.H. has not engaged in substantial gainful activity since November 10, 2015, the date of his SSI application. (Id.) At the second step, the ALJ determined that

D.L.H. has the severe impairment of ADHD. (Id.) At the third step, the ALJ found that D.L.H. does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (R. at 20-22.) The ALJ then proceeded to consider whether D.L.H. has an impairment or combination of impairments that functionally equals the Listings, but concluded that D.L.H. does not because D.L.H. does not have an impairment or combination of impairments that result in either marked limitations in two domains of functioning or extreme limitation in one domain of functioning. (R. at 22-33) As a result, the ALJ held that D.L.H. has not been disabled within the meaning of the Act since the November 10, 2015, application date. (R. at 33.)

10.  Plaintiff argues that the ALJ's decision is not supported by substantial evidence because his finding that D.L.H. has less than marked limitations in three domains was not supported by substantial evidence. For the following reasons, Plaintiff's arguments are unavailing.

11.  Plaintiff first argues that the ALJ erred in finding that D.L.H. was less than markedly limited in acquiring and using evidence. In explaining this conclusion, the ALJ noted D.L.H.'s treatment for ADHD and his behavioral and occupational therapy, but also observed that D.L.H.'s report cards show a nearly average ability to acquire information, with grades largely in the average range, and teacher comments that do not refer to any deficiencies in D.L.H.'s academic abilities. The ALJ further noted that D.L.H.'s IQ was 93. (R. at 28.)

12.  Plaintiff argues that the ALJ erred because he failed to take into account the limitations identified in a report by D.L.H.'s kindergarten teacher, Melissa Cinquino. In a narrative report dated December 27, 2017, Ms. Cinquino opined that D.L.H.'s math,

5

reading, and writing skills were all "below grade level" and that D.L.H. received "integrated co-teaching" in these subject areas. (R. at 832-34.) On an undated check-the-box form, his teacher opined that D.L.H. had "very serious" problems reading and comprehending written material and understanding class discussions. (R. at 786.) Ms. Cinquino told a classroom observer on November 2, 2017, that D.L.H. did not know all his letters. (R. at 830.) Plaintiff argues that the ALJ erred in failing to discuss directly and adopt the opinions from Ms. Cinquino's teacher evaluation and comments.

13.     Teachers are "valuable sources of evidence for assessing impairment severity and functioning," Archer ex rel. J.J.P. v. Astrue, 910 F.Supp.2d 411, 423 (N.D.N.Y. 2012), and a teacher's report should be "afforded significant weight" when the reporting teacher has had an extended opportunity to observe a claimant's functioning. Titus ex rel. N.M.C. v. Colvin, 12–CV–1056, 2014 WL 897038, at *9 (N.D.N.Y. Mar. 6, 2014). However, a teacher's report is not dispositive, in and of itself, of the inquiry regarding a claimant's functioning. Stanley v. Comm'r, 32 F. Supp. 3d 382, 393 (N.D.N.Y.2014). An ALJ must ultimately decide how to resolve conflicting evidence, and is not obliged to adopt wholesale any one opinion. Matta v. Astrue, 508 Fed. Appx. 53 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he [is] entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."); Burdick v. Comm'r of Soc. Sec., 6:18-CV-06881, 2020 U.S. Dist. LEXIS 51908 (W.D.N.Y. Mar. 25, 2020) ("The ALJ must assess an RFC that is consistent with the record as a whole, but it does not have to correspond with one particular medical opinion."). Further, when "the evidence of record permits [a reviewing court] to glean the

rationale of an ALJ's decision, [it does] not require that he have mentioned every item of testimony presented ,,, or have explained why he considered particular evidence unpersuasive or insufficient to lead [her] to a conclusion of disability". Pankey v. Colvin, No. 7:14-CV-0923 GTS, 2015 WL 4041739, at *8 (N.D.N.Y. July 1, 2015) (citing Phelps v. Colvin, 20 F.Supp.3d 392, 404 (W.D.N.Y. 2014); see also Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983).

14.   Here, while some evidence in the record supports D.L.H.'s limitations in this domain—including Ms. Cinquino's evaluation, the record also contains evidence supporting the ALJ's determination. D.L.H. began taking medication for ADHD in late 2017, and participated in ongoing behavioral therapy in 2017 and 2018. (R. at 766-722, 847-858.) D.L.H.'s report card from the end of Kindergarten, after a period of medication, reveals academic abilities at or somewhat below average. (R. at 887-889.) The comments for the last quarter by another teacher, Caitlin Kozlowski, state that D.L.H. "has grown both academically and socially throughout this kindergarten year," and note that D.L.H. can read many words, write sentences, and perform basic math skills. (R. at 890.)

15.   The ALJ took evidence of D.L.H.'s limitations into account in determining that D.L.H. had less than marked limitations in acquiring and using information.  But he ultimately determined that other evidence, including D.L.H.'s report card and IQ score, were more persuasive.  The ALJ gave a rationale for his decision, and the record supports it. This Court finds that ALJ's determination was supported by substantial evidence.

16.   Plaintiff further argues that the ALJ erred in determining that D.L.H. had less than marked limitations in attending and completing tasks.  In reaching this determination, the ALJ noted that Plaintiff had to remind DLH about chores, but that school records and

reports displayed generally normal functioning. The ALJ also noted that behavioral therapy and medication had led to demonstrated improvement in this area, and that consultative examiner Dr. Gregory Fabiano had opined that D.L.H.'s attention and concentration were intact and age-appropriate. (R. at 29).

17. Evidence of improvement with treatment/medication can be substantial evidence for an ALJ to rely on. Reices-Colon v. Astrue, 523 F. App'x 796, 799 (2d Cir. 2013). In fact, section 416.924a(9) (b)(i) of Title 20 of the Code of Federal Regulations requires consideration of the effects of medication on a child's limitations. Pankey v. Colvin, No. 7:14-CV-0923 GTS, 2015 WL 4041739, at *4 (N.D.N.Y. July 1, 2015).

18. As above, Plaintiff argues that the ALJ erred in not adopting the limitations reflected in the evaluation by Melissa Cinquino. Regarding D.L.H.'s concentration, she observed that that D.L.H. "struggles to remain focused," his eyes wander when he is spoken to, and he requires multiple prompts to remain on task. (R. at 833.) The ALJ refers to this report in his decision, but clearly considered it in conjunction with other evidence in the record. (see R. at 24.) And the other evidence justifiably leads to a different conclusion. D.L.H.'s report card from the end of the same school year notes that he exhibited self-control with frequent reminders, and observed that he had "grown both academically and socially" during the school year, with increased knowledge of numbers and reading ability, which earlier notes had linked to his ability to concentrate. (R. at 890.) At his IEP meeting on June 15, 2018, it was observed that D.L.H. could sit for 15 minutes; although he struggled to execute daily classroom routines, the IEP stated that "there are no social and emotional needs that should be addressed through special education at this time." (R. at 895-96.) This improvement appears to correspond to D.L.H.'s beginning

medication and continuation of behavior therapy. The ALJ also cited to his own observations at the hearing, at which D.L.H. was cooperative, answered questions, and articulated his thoughts without difficulty. (R. at 30.) The ALJ did not err in weighing the evidence and not adopting the serious limitations mentioned in the November 2017 teacher report.

19. Finally, Plaintiff argues that the ALJ erred in finding that D.L.H. had less than marked limitations in interacting and relating with others. In coming to this conclusion, the ALJ specifically mentioned the finding of agency reviewer Dr. J. Meyer that D.L.H. had marked deficiencies in this domain, but cited to other evidence to support his determination. He noted that D.L.H. had friends at school and in the family, and that report cards evaluated D.L.H.'s abilities as average. The ALJ also noted D.L.H.'s cooperative behavior at his hearing.

20. Plaintiff argues that the ALJ erred in giving "significant weight" to the opinion of agency reviewer Dr. J. Meyer, yet not adopting Dr. Meyer's finding that D.L.H. was "markedly limited" in the domain of interacting and relating with others. (Docket No. 9-1 at p. 19, see also R. at 90-91.)

21. Dr. Meyer's opinion, dated December 30, 2015, based his finding of marked limitations in this domain on the fact that D.L.H. "tantrums frequently, can be aggressive, and has difficulty sharing toys." (R. at 91.) Yet evidence from after that date supports a different finding. D.L.H.'s kindergarten report card stated that D.L.H. "has a good sense of humor and has made many friends this year." D.L.H.'s IEP report for 2018-19 stated that D.L.H. is "able to initiate play with his peers with ease," and "enjoys talking to peers and select adults." (R. at 895.)

22. Here, the ALJ clearly considered Dr. Meyer's finding in his decision and even referred to it in his opinion. (R. at 30.) Yet, the ALJ explained, the record as a whole supported less than marked limitations, given that D.L.H. had friends from school and in his family, teacher comments indicated that he did display appropriate behavior but needed occasional or frequent reminders, and the ALJ had observed that D.L.H. was cooperative and answered questions without difficulty at the hearing.

23. While record contains evidence of D.L.H.'s limitations in this domain, it also contains evidence that D.L.H. was not markedly limited in interacting with others. (R. at 30.) The ALJ's discussion of his finding in this domain is well-supported with citations to specific evidence in the record, including the hearing testimony and D.L.H.'s medical and educational records. Thus, this Court concludes that the ALJ's evaluation is consistent with the record evidence in its entirety, even if it did not exactly mirror Dr. Meyer's assessment. See Matta, 508 Fed. App'x at 56 ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.").

24. Ultimately, the question for this Court is "not whether there might be some evidence in the record supporting [Plaintiff's] position, but rather whether substantial evidence supports the ALJ's decision." Torres o/b/o J.L.M.C. v. Saul, No. 19-CV-00072-MJR, 2020 WL 3046084, at *5 (W.D.N.Y. June 8, 2020) (citing Bonel ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013) ("[W]hether there is substantial evidence supporting the [claimant's] view is not the question here; rather, we must decide whether substantial evidence supports *the ALJ's decision*.")). In this case, the record contains evidence that

D.L.H. had limitations in all three of the areas Plaintiff discusses. However, the record also shows that D.L.H. improved with medication and therapy, and was able to approach average standards with reminders. The ALJ's finding that D.L.H.'s limitations in these three areas were less than marked is supported by substantial evidence.

25. Having reviewed the ALJ's decision in light of Plaintiff's arguments, this Court finds no error in the ALJ's determination. The decision contains an adequate discussion of the medical evidence supporting the ALJ's determination that D.L.H. was not disabled, and Plaintiff's aforementioned contentions are unavailing. Plaintiff's Motion for Judgment on the Pleadings is therefore denied, and Defendant's motion seeking the same relief is granted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 9) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 13) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:   December 4, 2020
         Buffalo, New York

                                                s/William M. Skretny
                                                WILLIAM M. SKRETNY
                                                United States District Judge